UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA

            -against-

BRIAN BURRELL,

              Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

97 CR 998 5 (RJD)

DEARIE, District Judge.

This is the third resentencing application by defendant Brian Burrell, who is currently serving a nineteen-year prison term. On May 18, 2012, the Court denied defendant's motion. ECF Docket # 412. This memorandum explains the Court's Order.

## I. BACKGROUND

In February 1999, after a trial before the late Honorable Eugene H. Nickerson, a jury convicted defendant of conspiring to distribute crack cocaine and heroin in violation of 21 U.S.C. §§ 841 and 846. According to the presentence report ("PSR"), defendant "direct[ed] prospective narcotics purchasers over to various distribution locations," collected proceeds from sellers and distributed firearms to co-conspirators. PSR at 7. Neither the indictment nor the jury verdict specified a quantity of drugs. Based upon findings within the PSR, however, defendant was "held accountable for the distribution of 30.77 kilograms of crack-cocaine." Id. This quantity resulted in a base offense level of 38, which Judge Nickerson adjusted upward by three levels for defendant's role in the offense, USSG § 3B.1.1(b), by two levels for defendant's possession of a firearm during the conspiracy, id. § 2D1.1(b)(1), and by another two levels because of a finding that defendant obstructed justice by attempting to influence a juror, id. § 3C1.1.

Defendant's adjusted offense level of 45 and Criminal History Category of VI were unchanged by his career offender status and his sentence, therefore, was not "based on" Section

4B1.1 of the Guidelines. Nevertheless, defendant's multiple prior felony convictions required Judge Nickerson to impose a life sentence under 18 U.S.C. § 841(b)(1)(A). On appeal, however, the Second Circuit vacated the sentence pursuant to the Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466 (2000), because defendant was sentenced "based on a quantity of narcotics that was neither alleged in the indictment nor found by the jury." United States v. Burrell, 289 F.3d 220, 225 (2d Cir. 2002). The Circuit "remand[ed] for resentencing to no more than thirty years of imprisonment," the maximum allowable under 21 U.S.C. § 841(b)(1)(C), which governs drug offenses of unspecified quantity. Id. at 225.

On remand in September 2003, this Court resentenced defendant to 318 months in prison. The Court assigned defendant a total offense level of 40, representing the prior adjusted offense level of 45 calculated by Judge Nickerson, reduced by three levels for the defendant's intervening acceptance of responsibility, see USSG § 3E1.1, and by another two levels because the government had since declined to pursue an obstruction-of-justice enhancement. In establishing defendant's base offense level of 38, this Court held defendant responsible for approximately 30 kilograms of crack cocaine. Given defendant's Criminal History Category of VI, the Guidelines mandated a sentence of 360 months to life imprisonment. This Court departed downward from the minimum sentence "through the vehicle of [USSG § 5K2.0]" by 42 months, the amount of time that defendant already had spent in state custody for offenses that were part of the charged conspiracy. 9/2/03 Sentencing Transcript ("Tr.") at 20. The Second Circuit affirmed, but stayed the mandate in light of the Supreme Court's pending decision in United States v. Booker, 543 U.S. 220 (2005). See United States v. Burrell, 115 Fed. Appx. 471, 472 (2d Cir. 2004).

At defendant's Booker resentencing in September 2006, this Court reduced defendant's sentence to 228 months in prison, representing a downward variance of 90 months from the

Court's prior, within-Guidelines sentence. This Court expressly found such a reduced sentence "reasonable in light of the statutory factors" in 18 U.S.C. § 3553(a). 9/15/06 Sentencing Tr. at 21. The Court described such a sentence as being "in symmetry" with the level and duration of defendant's participation in the conspiracy and "with other sentences imposed in the case," and likewise "reasonable given [that] he's older, shows some positive signs." Id.

The Sentencing Commission then twice retroactively amended the guidelines relating to crack cocaine offenses and the Supreme Court made clear that sentencing judges may deviate from the powder/crack cocaine sentencing ratios based upon policy disagreement alone. Kimbrough v. United States, 552 U.S. 85 (2007). This motion followed.

## II. DISCUSSION

A. 18 U.S.C. § 3582(c)(2)

"The Supreme Court . . . [has] explained that § 3582(c)(2) permits a 'limited adjustment to an otherwise final sentence' . . . and set forth a 'two-step inquiry' for resolving motions for a reduction in sentence pursuant to this provision." United States v. Mock, 612 F.3d 133, 136-37 (2d Cir. 2010) (quoting Dillon v. United States, 130 S. Ct. 2683, 2690-91 (2010)). "First, the defendant in question must be *eligible* for a reduction in sentence." Id. at 137 (emphasis added). To be eligible for a reduction, a defendant's sentence must be "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," and "such a reduction [must be] consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see Dillon, 130 S. Ct. at 2691 (holding that, in sentence modification proceedings based upon the crack cocaine amendments, § 1B1.10 conclusively and mandatorily "determines [a] prisoner's eligibility for a sentence modification and the extent of the reduction authorized"). "If, and only if, a defendant is eligible for a reduction in sentence under" these provisions, then a

3

district court may "'consider any applicable § 3553(a) factors and determine whether'" a reduction is warranted. Mock, 612 F.3d at 137 (quoting Dillon, 130 S. Ct. at 2692).

Defendant's sentence was based in part upon the crack cocaine Guidelines, the offense levels for which the Sentencing Commission has since lowered twice. Despite these general reductions, a sentence modification is "not authorized" where the crack cocaine amendments "do[] not have the effect of lowering *the defendant's* applicable guideline range," USSG § 1B1.10(a)(2)(B) (emphasis added), such as where "the weight of the controlled substances attributed to [defendant] is so great that [his] respective sentencing range[] would be the same under the amended Sentencing Guidelines," United States v. Johnson, 633 F.3d 116, 116 (2d Cir. 2011).

As in Johnson, here there is "no basis in the record to challenge successfully the [prior] determination of" drug quantity attributable to defendant. Id. at 118; see also USSG § 1B1.10(b)(1) (directing a court evaluating a § 3582(c)(2) motion to substitute the amended offense levels and "leave all other guideline application decisions unaffected"). Because "individual defendants are responsible for all reasonably foreseeable quantities of drugs distributed by a conspiracy of which they were members," the Court permissibly sentenced (and then resentenced) defendant "on the basis of an amount of crack cocaine in excess of the amount for which he was originally charged." Johnson, 633 F.3d at 118. At defendant's 2003 resentencing, the Court held defendant responsible for approximately 30 kilograms of crack cocaine, resulting in a base offense level of 38. The Second Circuit affirmed both findings. See United States v. Burrell, 115 Fed. Appx. 471, 472 (2d Cir. 2004). During defendant's 2006 resentencing, moreover, the Court stated that it is "not backing off those findings" and does "not

4

have a problem" with defendant's previously established base offense level. 9/15/06 Sentencing Tr. at 7.

The recent amendments raise the minimum quantity of crack cocaine required for the highest base offense level (38) to 8.4 kilograms, see USSG § 2D1.1(c)(1), an amount still far below the 30 kilograms for which defendant was held responsible. Substituting the amended offense levels for those in place at defendant's sentencing, therefore, makes no difference; defendant's base offense level remains 38, his total offense level remains 40,[1] and the applicable Guideline range remains 360 months-to-life imprisonment given his criminal history category of VI. See Johnson, 633 F.3d at 117 (affirming district court's denial of several § 3582(c)(2) motions where raised minimum quantities did not affect the defendants' applicable sentencing ranges). Accordingly, this Court lacks the discretion to modify defendant's sentence pursuant to 18 U.S.C. § 3582(c)(2).

B. United States v. Regalado

On May 19, 2008, defendant's then-pending appeal of his second resentencing in 2006 was remanded "for further proceedings consistent with United States v. Regalado." ECF Docket # 353, Judgment of USCA. Just prior to defendant's 2006 resentencing, the Second Circuit had held that district courts could not mitigate a defendant's sentence based upon a disagreement with the 100:1 ratio between powder and crack cocaine quantities for the same offense levels within the Guidelines. United States v. Castillo, 460 F.3d 337, 357 (2d Cir. 2006) ("[N]othing in Booker suggests that it is the task of district court judges to pronounce broad policy choices rather than specific sentences based on the specific facts of a case."). In Kimbrough, however, the Supreme

---

[1] A total offense level of 40 reflects the three-point reduction from the base offense level of 38 for acceptance of responsibility, USSG § 3E1.1, and a subsequent three-point increase for defendant's role in the offense, id. § 3B1.1(b), and two-point increase for possessing a firearm during the conspiracy, id. § 2D1.1(b)(1).

Court clarified that district courts after <u>Booker</u> could indeed "conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes." 552 U.S. 85, 110 (2007). Consequently, the Second Circuit in <u>Regalado</u> recognized that "when a district court sentenced a defendant for a crack cocaine offense before <u>Kimbrough</u>, there was an unacceptable likelihood of error." <u>Regalado</u>, 518 F.3d at 147. Hence, on remand, this Court must determine whether it "would have exercised its now clear discretion to mitigate the sentencing range produced by the 100-to-1 ratio" between powder and crack quantities within the Guidelines had the Court fully appreciated this discretion at the time of defendant's 2006 resentencing.[2] <u>Id.</u> at 148.

<u>Regalado</u> does not require this Court to resentence defendant. Rather, that decision's "more limited purpose [is] permitting the sentencing judge to determine *whether* to resentence." 518 F.3d at 148 (internal quotation marks omitted) (emphasis in original); see also <u>United States v. Givens</u>, 374 Fed. Appx. 223, 225 (2d Cir. 2010) (contrasting a "full resentencing" with "the more limited procedures set forth in <u>Regalado</u>"). As such, <u>Regalado</u> sets forth a two-step procedure for remand. The Court must first decide "whether it would have imposed a non-Guidelines sentence knowing that it had discretion to deviate from the Guidelines" due to disagreement with the powder/crack cocaine disparity. <u>Regalado</u>, 518 F.3d at 149. "If so, the court should vacate the original sentence and resentence the defendant," but "[i]f not, the court should state on the record that it is declining to resentence [with] an appropriate explanation for this decision." <u>Id.</u>

---

[2] In his submission prior to his 2006 resentencing, defendant expressly argued that notwithstanding the Guidelines' advisory nature, imposition of an "extraordinary length of incarceration based [on] the crack cocaine ratio would violate the principles of <u>Booker</u>." ECF Docket # 327, Def. 2006 Sentencing Mem. at 16. Moreover, at defendant's 2003 resentencing, this Court noted: "[A]lthough many of us are uncomfortable with these ratios . . . this is the view of Congress that we're obligated to implement." 9/2/03 Sentencing Tr. at 19.

In 2006, varying downward from the applicable range of 360 months to life imprisonment, this Court imposed upon defendant a non-Guidelines sentence of 228 months. Defendant's current sentence thus moots Regalado's main question of "whether [the Court] would have imposed a non-Guidelines sentence knowing that it had discretion to deviate" from the range produced by the 100-to-1 ratio. 518 F.3d at 149. Moreover, the Court would reach the same result were it expressly to consider the consequences of the 100-to-1 disparity. Given the large quantity of crack involved, defendant's current sentence still would be a non-Guidelines sentence were the crack/powder disparity for the highest base offense level 18:1 or even 10:1.

Indeed, defendant's sentence would be far below the Guidelines range even if there was no disparity (i.e. a ratio of 1:1) between crack and powder quantities required to trigger the same base offense levels. Had defendant's crime involved 30 kilograms of powder as opposed to crack cocaine, defendant's base offense level today would be 34 instead of 38, defendant's adjusted offense level would be 36[3] instead of 40, and the minimum applicable Guidelines sentence would, therefore, be 282 months (taking into account the 42-month downward departure). This range is still appreciably longer than 228-month sentence defendant in fact received. See United States v. Portee, 378 F. App'x. 103, 104 (2d Cir. 2010) (finding "no procedural error" where "the district court determined that even using [a] 1:1 crack-to-powder ratio, the advisory Guidelines range remained 360 months to life imprisonment"). In short, Kimbrough and Regalado target evils that do not haunt this defendant.

Defendant makes several arguments bearing upon the factors listed in 18 U.S.C. § 3553(a), none of which change the result. When resentencing defendant in 2006, the Court

---

[3] The hypothetical total offense level of 36 would apply notwithstanding defendant's career offender status, which provides for a minimum offense level of 31 given the statutory-maximum sentence of 30 years for defendant's offense and the three-level downward adjustment for acceptance of responsibility. See USSG § 4B1.1(b).

accounted for defendant's level and duration of participation in the conspiracy, other sentences imposed in the case, and defendant's post-incarceration efforts at rehabilitation. Defendant now seeks further leniency based upon those same factors. As but one example, defendant notes that the Court recently resentenced one of his co-conspirators, Howard Midgette, to time served. Having pleaded guilty to an offense involving 1.5 kilograms of crack, however, Mr. Midgette successfully moved for a sentence modification under § 3582(c)(2) because the amended Guidelines for crack offenses reduced the sentencing range applicable to his offense. See 98 CR 998-4, ECF Docket #364.

### III. CONCLUSION

As discussed above, § 3582(c)(2) provides no relief to defendant. Moreover, Regalado states that proceedings on remand present "the same essential question" as a § 3582(c)(2) motion, and here "the ultimate result [is] the same." 518 F.3d at 151. Accordingly, the Court declines to resentence defendant.

SO ORDERED.

Dated: Brooklyn, New York
      September _11_, 2012           /s/ Raymond J. Dearie

                                        RAYMOND J. DEARIE
                                        United States District Judge